## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

|  |  |
|---|---|
| **DUSTIN VIVEROS**, individually, and on behalf of all others similarly situated, | CIVIL ACTION |
| Plaintiffs, | No.: |
| | Hon. |
| v. | |
| **PETDINE, LLC**, | |
| Defendant. | |

### COLLECTIVE AND CLASS ACTION
### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Dustin Viveros ("Plaintiff"), individually and on behalf of all others similarly situated (Plaintiff along with the putative members of the FLSA Collective and Rule 23 Classes are hereinafter referred to as "Plaintiffs"), by and through his undersigned attorneys, hereby brings this Collective and Class Action Complaint against Defendant, PetDine, Inc. ("Defendant"), and alleges as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), §§ 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), §§ ILCS 115/1, *et seq.* and common law.

2.      Defendant is a producer of pet products.[1] Defendant produces a wide range of products including soft chews, dental chews, kibble, powder, and liquids.[2]

---

[1] https://petdinellc.com/ (last visited February 18, 2025).
[2] https://petdinellc.com/products/ (last visited February 18, 2025).

3.      Defendant employs and employed hourly production workers, including Plaintiff, to facilitate its operations with a number of job titles, including, but not limited to: Material Handler (hereinafter collectively referred to as "production employees").

4.      Hundreds of production employees work for Defendant in its manufacturing facilities in Colorado and Illinois.

5.      Defendant requires its production employees to wear personal protective equipment ("PPE") when working in its manufacturing facilities.

6.      Defendant required Plaintiff and the production employees to change into ("don") and change out of ("doff") the PPE before and after their work shifts in designated locations at Defendant's manufacturing facilities.

7.      The individuals Plaintiffs seek to represent in this action are current and former production employees who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendant's violations of federal and state law.

8.      Defendant knew or could have easily determined how long it took Plaintiffs to complete their donning and doffing, and Defendant could have properly compensated Plaintiffs for this pre- and post-shift work, but deliberately chose not to.

9.      Defendant's practice of failing to compensate Plaintiffs for all hours worked violated the production employees' rights under the FLSA.

10.     Defendant is liable for its failure to pay its production employees for all work performed.

11.     Employees who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre-shift and post-shift work performed for Defendant, and compensation at the appropriate overtime rate for all hours worked in excess of 40 per week, an

equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant
to 29 U.S.C. § 216(b).

12.    Plaintiff seeks a declaration that his rights, and the rights of the putative
collective/class members were violated, an award of unpaid wages, an award of liquidated
damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and
costs to make them whole for damages they suffered, and to ensure that they and future workers
will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over Plaintiffs' FLSA claim under 28
U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201 *et seq.*

14.    Additionally, this Court has jurisdiction over Plaintiffs' FLSA claim under 29
U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any
employer … in any Federal or State court of competent jurisdiction."

15.    Defendant's annual sales exceed $500,000, and Defendant has more than two
employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees,
including Plaintiffs, engage in interstate commerce or in the production of goods for commerce;
therefore, they are also covered by the FLSA on an individual basis.

16.    This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28
U.S.C. § 1367 because the state law claims and the federal claim are so closely related that they
form part of the same case or controversy under Article III of the United States Constitution.

17.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201
and 2202.

18.    The Court has personal jurisdiction over Defendant because Defendant conducts

business within the state of Colorado, employs individuals within the state of Colorado, is registered with the Colorado Secretary of State, and maintains its principal place of business in the state of Colorado.

19.    Personal jurisdiction also applies to Defendant because Defendant has purposefully availed itself of the privilege of conducting activities in the state of Colorado and has established minimum contacts sufficient to confer jurisdiction over it; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

20.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts business in, and is headquartered in, this District, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this District.

## PARTIES

21.    Plaintiff Dustin Viveros is an Illinois resident who worked for Defendant as a Material Handler in Defendant's Harvard, Illinois production facility from approximately February 2024 to January 2025.

22.    Defendant most recently paid Plaintiff $22.00 per hour. Plaintiff Viveros signed a consent to join this collective action lawsuit, attached as **Exhibit A.**

23.    Defendant PetDine, LLC is a Colorado Corporation with its principal office mailing address at 4666 E Faries Pkwy, Decatur, IL 62526, and its principal office street address at 4700 Innovation Drive, Suite B, Fort Collins, CO 80525.

24.    Defendant's registered agent for service of process is C T Corporation System, located at 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112.

## **GENERAL ALLEGATIONS**

25.     Defendant is a contract manufacturing partner, which produces high quality pet products, including pet supplements and treats.[3]

26.     Defendant employs or employed hourly production employees, including Plaintiff, to facilitate its operations.

27.     For food and personal safety purposes, Defendant required Plaintiff and all other production employees to wear company-issued protective clothing, and safety gear during their work shifts in order to protect the health and safety of their employees and customers.

28.     The company-issued protective clothing and safety gear included hard hat, steel toed boots, vests, ear plugs, and safety goggles.

29.     Defendant required Plaintiff and all other production employees to change into ("don") and change out of ("doff") the PPE before and after their work shifts in designated locations at Defendant's manufacturing facilities.

30.     After Plaintiff and all other production employees arrived at the facility, they were required to enter the locker room, wash their hands and feet, and put on all of the company-mandated PPE. Then they walked to the floor of their department to clock in for their shift.

31.     The pre-shift donning and walking process took Plaintiff and all other production employees substantial time on a daily basis, ranging from 15 to 20 minutes per shift. This process occurred before they clocked in to begin their scheduled shift.

32.     At the end of each shift, Plaintiff and all other production employees were required to clock out first, and then take off all of their PPE gear, and store it in the locker room.

33.     Because the production employees quickly filled the locker room, there was often

---

[3] https://petdinellc.com/about/what-we-do/ (last visited February 18, 2025).

a line to get in and complete the doffing process.

34.    As a result, the post-shift doffing process took Plaintiff and all other production employees a longer time on a daily basis, ranging from 20 to 30 minutes per shift, and occurred after their scheduled shift had ended.

35.    Plaintiff and all other production employees performed uncompensated, off-the-clock work in the range of 35 to 50 minutes per shift.

36.    Defendant did not pay Plaintiff and all other production employees for any of this time, which was their first and last principal activities of the workday. Plaintiff's and all other production employees' shifts did not start until they entered the manufacturing facility and accessed the time clock.

37.    Defendant placed the time clock on the floor of their facilities.

38.    Consequently, Plaintiff and the production employees could not clock in until they had completed donning their PPE, and had to clock out before they doffed their PPE.

39.    Plaintiff complained to his supervisor that he could not clock in on the floor of the factory until he had already put on his PPE in the locker room. In response, Plaintiff was told to stop complaining and keep quiet.

40.    Thus, Defendant willfully maintained its time clock in its facilities so that compensation for donning and doffing PPE was impossible.

41.    Defendant required all production employees to don and doff the same or substantially similar PPE; and Defendant compensated them in the same manner.

42.    Defendant required all production employees to don and doff the PPE before and after their work shifts in designated locations at Defendant's manufacturing facilities.

43.    Defendant prohibited Plaintiff and all production employees from leaving the

locker room and walking to the production area without wearing their protective clothing and protective shoes/boots.

44.     Defendant prohibited Plaintiff and all production employees from leaving the production area and walking back to the locker room without wearing their protective clothing and protective shoes/boots.

45.     Defendant prohibited Plaintiff and all production employees from leaving the manufacturing facility without doffing the PPE and changing into a clean pair of shoes.

**A.    Donning and Doffing PPE at the Worksite are Principal Work Activities and are Compensable under the FLSA**

46.     Defendant required Plaintiff and the production employees to wear the PPE during their work shifts in order to protect the health and safety of their employees processing and packaging their products, and their customers.

47.     Donning and doffing the PPE is an integral and indispensable part of Plaintiffs and the production employees' principal work activities, as they could not safely perform their production activities without wearing the PPE.

48.     Donning and doffing protective clothing and safety gear are principal activities under the Portal-to-Portal Act, 29 U.S.C. § 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in his first principal activity and before he finishes his last principal activity, is part of a "continuous workday" and is compensable under the FLSA.

49.     The determination of whether donning and doffing a safety uniform is compensable begins with *Steiner v. Mitchell*, 350 U.S. 247 (1956), the seminal case on the subject. In *Steiner*, the Supreme Court held that donning and doffing uniforms was compensable when employees handling dangerous chemicals in a wet storage battery factory were "compelled by circumstances,

including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employer to provide." *Id*. at 248.

50.    The factory workers in *Steiner* were exposed to high levels of lead particles (dust and fumes), which "permeate[d] the entire plant and everything and everyone in it." *Id*. at 249. Lead dust attached to the skin, hair, clothing and shoes of the employees, and presented significant risks to family members of the workers because toxic particles could be "brought home in the workers' clothing or shoes." *Id*. at 250.

51.    Consequently, the workers were issued old but clean clothes on-site, and were required to don and doff the clothes at the factory and shower on the premises before leaving in order to minimize health risks to themselves and others. *Id*. at 255. Under these circumstances, the Court had "no difficulty" concluding that these dress-related activities were compensable under the FLSA. *Id*.

52.    Following the Supreme Court's decision in *Steiner*, the Department of Labor ("DOL") issued regulations providing further guidance about the types of dress-related activities that are compensable under the FLSA. One such regulation, 29 C.F.R. § 790.8(c), describes "principal activity" as follows:

> Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity. On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity.

53.    More recently, in an advisory memorandum regarding the Supreme Court's decision in *IBP v. Alvarez*, 546 U.S. 21 (2005), the DOL reiterated its view that the FLSA requires compensation for donning and doffing safety gear when the donning and doffing activities must

be performed at work. The DOL opined:

> Therefore, the time, no matter how minimal, that an employee is required to spend putting on and taking off gear on the employer's premises is compensable 'work' under the FLSA. … However, donning and doffing of required gear is within the continuous workday only when the employer or the nature of the job mandates that it take place on the employer's premises. It is our longstanding position that if employees have the option and the ability to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the [worksite].

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at

*https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2*.

54.     In light of the Supreme Court's opinion in *Steiner*, numerous Circuit Courts have

endorsed the compensability of donning and doffing safety gear. For example, in *Tum v. Barber*

*Foods, Inc.*, 360 F.3d 274, 278 (1st Cir. 2004), the First Circuit noted with approval the district

court's opinion regarding the compensability of donning and doffing safety gear when wearing

such gear is required by the employer and/or government regulation:

> The district court found that the donning and doffing of required gear is an integral and indispensable part of Employees' principal activities. *See generally Steiner v. Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956) (holding that activities should be considered integral and indispensable when they are part of the principal activities for the particular job tasks); *Mitchell v. King Packing Co.,* 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956). We agree with the district court's conclusion as to the required gear. In the context of this case, Employees are required by Barber Foods and or government regulation to wear the gear. Therefore, these tasks are integral to the principal activity and therefore compensable. *See Alvarez v. IBP, Inc.,* 339 F.3d 894, 903 (9th Cir. 2003) (holding that donning and doffing which is both required by law and done for the benefit of employer is integral and indispensable part of the workday); *cf.* 29 C.F.R. § 1910.132(a).

*Id*.

55.     In *Franklin v. Kellogg Co.,* 619 F.3d 604 (6th Cir. 2010), the Sixth Circuit

considered the issue of employee compensation for time spent donning and doffing food protective

clothing and safety gear at the beginning and the end of work shifts. The protective gear at issue

included hair and beard nets, safety glasses, ear plugs, and "bump caps." *Id.* at 608. The Sixth

Circuit applied the *Steiner* test, asking whether the activities of donning and doffing were an "integral and indispensable" part of the principal activity of the employment. *Id.* at 619-20. The Sixth Circuit answered this question in the affirmative, reasoning that the activities were required by the manufacturer, and ensured untainted products and safe and sanitary working conditions. *Id.* at 620.

56.     In a case involving the donning and doffing of protective gear at a meat processing plant, *Alvarez v. IBP, Inc.,* 339 F.3d 894 (9th Cir. 2003), *aff'd,* 546 U.S. 21 (2005), the Ninth Circuit also applied the *Steiner* test. The court considered whether these activities of donning and doffing at the beginning and end of a work shift were "integral and indispensable" to the principal activity of the employment, inquiring whether the activities were "necessary to the principal work performed and done for the benefit of the employer." *Id.* at 902-03. The Ninth Circuit concluded that the "integral and indispensable" test set forth in *Steiner* was satisfied with regard to the donning and doffing of all the protective gear at issue. *Id.* at 903.

**B.     Plaintiffs' Walking Time was Compensable Because it Occurred After the Beginning of the their First Principal Activity**

57.     The time spent by Plaintiff and the production employees walking to and from the locker room and production area was compensable because it occurred after donning their PPE.

58.     On appeal to the Supreme Court, the employers in *Alvarez* did not challenge the Ninth Circuit's holding that, in light of *Steiner,* donning and doffing of protective equipment is compensable under the Portal Act. *Alvarez,* 546 U.S. at 32. Instead, the employers appealed a separate ruling regarding the compensability of walking time. *Id.* The Supreme Court held that walking time is compensable if it occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity. *Id.* at 37.

59.     In the wake of the Supreme Court's decision in *Alvarez*, the DOL issued an advisory

memorandum stating, in pertinent part,

> The Supreme Court's unanimous decision in *Alvarez* holds that employees who work in meat and poultry processing plants must be paid for the time they spend walking between the place where they put on and take off protective equipment and the place where they process the meat or poultry. The Court determined that donning and doffing gear is a "principal activity" under the Portal to Portal Act, 29 U.S.C. 254, and thus time spent in those activities, as well as any walking and waiting time that occurs after the employee engages in his first principal activity and before he finishes his last principal activity, is part of a "continuous workday" and is compensable under the Fair Labor Standards Act (FLSA), 29 U.S.C. 201 et seq.

Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006), available at

*https://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm#_ftnref2* (footnote omitted).

## C.     Defendant Breached its Contractual Obligation to Pay Plaintiff His Regular Hourly Rates for Each Hour Worked

60.     In approximately February 2024, Defendant offered Plaintiff the opportunity to work for Defendant as an hourly production employee.

61.     In consideration for Plaintiff's work as an hourly production employee, Defendant promised to pay Plaintiff an hourly wage for each hour he worked for Defendant.

62.     In approximately February 2024, Plaintiff accepted Defendant's offer of employment and began working for Defendant, creating a valid contract between Defendant and Plaintiff whereby Defendant was obligated to pay Plaintiff his regular hourly rate of pay for each hour that he worked for Defendant, including the donning and walking activities described herein.

63.     Additionally, pursuant to this contract, Defendant was obligated to pay Plaintiff his proper overtime rate for all hours worked over 40 hours in a workweek.

64.     Throughout his employment with Defendant as an hourly production employee, Plaintiff performed all of the work required by Defendant, including the donning and walking described herein. Plaintiff also regularly worked over 40 hours in a workweek, entitling him to overtime pay. In performing this work, Plaintiff fulfilled all of his duties under the contract.

65.     However, throughout Plaintiff's entire employment with Defendant, Defendant repeatedly and systematically breached the contract by not paying Plaintiff his regular hourly rate of pay for the donning and walking activities described herein.

66.     Defendant's failure to pay Plaintiff for each hour of work he performed and that was required of him as an hourly production employee, was a material breach by Defendant of the parties' contract.

67.     Because of Defendant's breaches, Plaintiff was deprived of wages owed to him under the contract, including unpaid "gap time" wages.[4]

68.     Upon information and belief, all of the other hourly production employees who worked for Defendant had a similar valid contract with Defendant.

69.     Upon information and belief, Defendant repeatedly and systematically breached its contracts with the production employees in the same way that it breached its contract with Plaintiff.

70.     Defendant's contractual promises to pay Plaintiff and the production employees their applicable hourly rate for each hour worked is evidenced by, among other things, each earnings statement issued to the Plaintiffs.

71.     Plaintiff and the production employees are owed wages at their contractual hourly wage rates for the time that they worked off the clock during their employment with Defendant, including unpaid "gap time" wages.

72.     Plaintiff and the production employees earned these wages at the moment they performed the off-the-clock work, and the wages were due to be paid to Plaintiff and the production

---

[4] "Gap time" refers to time that is not covered by the FLSA's overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the FLSA's minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their weekly wages are averaged across their actual time worked.

employees no later than the pay day for the period in which the off-the-clock work was performed.

73.     Despite the fact that Plaintiff and the production employees performed the off-the-clock work before and after their scheduled shifts, these off-the-clock hours were not peripheral tasks for which they were owed additional compensation. Instead, the off-the-clock work, performed by Plaintiff and the production employees pursuant to Defendant's express instructions, constituted principal work activities that are integral and indispensable to the hourly production employees' work; and Defendant was contractually obligated to pay Plaintiff and the production employees for this time at the regular hourly rates at which they were employed.

74.     The fact that Defendant deliberately chose not to compensate Plaintiff and the production employees for this work, and that the off-the-clock work was performed before Plaintiffs' and the production employees' scheduled shifts, does not somehow relieve Defendant of its contractual obligations to pay the Plaintiff and the production employees for this time.

75.     Defendant was contractually obligated to pay Plaintiff and the production employees their regular rates of pay for *all hours worked*, including hours worked before after their scheduled work shifts, because that is what the parties agreed to in their contract.

**D.     Defendant Benefitted from the Unpaid Donning and Walking Activities**

76.     At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiff and the production employees in connection with the above-described pre-shift donning and walking activities and was aware it was occurring off the clock and without compensation.

77.     Plaintiffs' and the production employees' pre-shift donning and walking conferred a benefit on Defendant in that they were ready to work in the required PPE at the beginning of their shift and that Defendant saved the funds it would have spent had it paid Plaintiff and the production employees for that work.

13

78.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiff and the production employees.

79.     At all relevant times, Defendant was able to track the amount of time Plaintiff and the production employees spent in connection with the pre-shift donning and walking activities. However, Defendant failed to do so and failed to pay Plaintiffs and the production employees for all of the work they performed.

80.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the production employees in order to pressure them into performing the pre-shift donning and walking activities without pay.

81.     Defendant expressly trained and instructed Plaintiff and the production employees to begin performing the above-described pre-shift donning and walking activities *before* the start of their scheduled shifts, to ensure they were prepared to engage in their production activities prior to the start of their shifts.

82.     At all relevant times, Defendant's policies and practices deprived Plaintiff and the production employees of wages owed for the pre-shift donning and walking activities they performed. Because Plaintiff and the production employees regularly worked 40 hours or more per week, Defendant's policies and practices also deprived them of overtime pay.

83.     Defendant knew or should have known that the time spent by Plaintiff and the production employees in connection with the pre-shift donning and walking activities was compensable under the law. Indeed, in light of the explicit DOL guidance and Supreme Court case law cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

84.     Despite knowing Plaintiff and the production employees performed work before

their scheduled work shifts, Defendant failed to make any effort to stop or disallow the pre-shift

work and instead suffered and permitted it to happen.

85.     Depending on when the uncompensated work was performed, unpaid wages related

to the pre-shift work described herein are owed to Plaintiff and the production employees at the

FLSA mandated overtime premium or at their standard rate of pay.

## FLSA COLLECTIVE ACTION ALLEGATIONS

86.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own

behalf and on behalf of:

> *All current and former production employees who worked for PetDine, LLC at*
> *any of its manufacturing facilities during the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this

definition if necessary.

87.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate

Plaintiff and other similarly situated production employees.

88.     Excluded from the proposed FLSA Collective are Defendant's executives and

administrative and professional employees, including computer professionals and outside

salespersons.

89.     Consistent with Defendant's policy and pattern or practice, Plaintiff and the FLSA

Collective were not paid premium overtime compensation for all hours worked over 40 in a

workweek.

90.     Defendant assigned and/or was aware of all of the work that Plaintiff and the FLSA

Collective performed.

91.     As part of their regular business practices, Defendant intentionally, willfully, and

repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a.    Willfully failing to pay production employees, including Plaintiff and the FLSA Collective, premium overtime wages for all hours worked in excess of 40 hours per workweek; and

b.    Willfully failing to record all of the time that production employees, including Plaintiff and the FLSA Collective, worked for the benefit of Defendant.

92.    Defendant is aware or should have been aware that federal law required it to pay Plaintiff and the FLSA Collective overtime premiums for all hours worked in excess of 40 per workweek.

93.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

94.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

95.    The employment relationships between Defendant and every proposed FLSA Collective member is the same. The key issues - the amount of uncompensated pre-shift donning and walking time - do not vary substantially among the proposed FLSA Collective members.

96.    Many similarly situated current and former production employees have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

97.    Court-supervised notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

98.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

99.    Plaintiff estimates the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds of workers. The precise number of FLSA Collective members should be readily ascertainable from a review of Defendant' personnel and payroll records.

## **RULE 23 ILLINOIS STATE LAW CLASS ACTION ALLEGATIONS**

100.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> *All current and former production employees who worked for PetDine, LLC at any of its manufacturing facilities in Illinois during the applicable statute of limitations period.*

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

101.    The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

102.    There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class. These common legal and factual questions include, but are not limited to, the following:

      a.    Whether the time Rule 23 Illinois Class members spent on pre-shift and post-shift work activities is compensable time;

      b.    Whether Rule 23 Illinois Class members are owed wages for time spent performing off-the-clock work activities, and, if so, the appropriate amount

thereof.

103.    Plaintiff's claims are typical of those of the Rule 23 Illinois Class in that he and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims, and his legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

104.    Plaintiff will fully and adequately protect the interests of the Rule 23 Illinois Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

105.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

106.    This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

107.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the

specified criteria to pursue his claim as a class action").

108.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

109.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> ***All current and former production employees who worked for PetDine, LLC at any of its manufacturing facilities during the applicable statute of limitations period.***

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

110.    The Rule 23 Nationwide Class members are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

111.    There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a.    Whether the time Rule 23 Nationwide Class members spent on pre-shift and post-shift donning and walking activities is compensable time;

b.    Whether Rule 23 Nationwide Class members are owed wages for time spent performing pre-shift donning and walking activities, and if so, the appropriate amount thereof; and

> c.    Whether Defendant's non-payment of wages for all compensable time
> constitutes breach of contract or unjust enrichment.

112.    Plaintiff's claims are typical of the Rule 23 Nationwide Class members' claims because Plaintiff and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims, and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

113.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

114.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

115.    This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

116.    Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A.*, 559 U.S. at 398 ("By its

terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

117.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification under Fed. R. Civ. P. 23(b)(2) is also appropriate.

### COUNT I
### VIOLATION OF FLSA, 29 U.S.C. § 201 *et seq.*
### FAILURE TO PAY OVERTIME WAGES
### (29 U.S.C. § 216(b) Collective Action)

118.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

119.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

120.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

121.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

122.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

123.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

124.    At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective to perform unpaid off-the-clock work in connection with their donning and walking

activities, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

125.    The off-the-clock work performed every shift by Plaintiff and the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

126.    In workweeks where Plaintiff and other FLSA Collective members worked over 40 hours, Defendant failed to compensate Plaintiff and the FLSA Collective members for the unpaid off-the-clock work time.

127.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes Plaintiffs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly paid Plaintiff and the FLSA Collective for these work activities, but deliberately chose not to.

128.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(On Behalf of the Rule 23 Illinois Class)**
**VIOLATION OF ILLINOIS MINIMUM WAGE LAW ("IMWL"),**
**§§ 820 ILCS 105/1, *et seq*. AND ILLINIOS WAGE PAYMENT AND COLLECTION ACT**
**("IWPCA"), §§ ILCS 115/1, *et seq*.**

129.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

130.    At all times relevant to the action, Defendant was an employer covered by the mandates of the IMWL, and Plaintiff and the Rule 23 Illinois Class were employees entitled to the IMWL's protections. *See* §§ 820 ILCS 105/3(c)-(d).

131.    The IMWL, §§ 820 ILCS 105/1, *et. seq*. requires employers to pay their employees

minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of forty (40) per week. *See* §§ 820 ILCS 105/4; 820 ILCS 105/4a.

132.     820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

133.     The IWPCA "applies to all employers and employees in [Illinois], … but excepting employees of the State or Federal governments." *See* §§ 820 ILCS 115/1. Plaintiff and the Rule 23 Illinois Class were not employees of the State or Federal government, therefore, they are entitled to the protections of the IWPCA.

134.     Under 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

135.     Under 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

136.     Additionally, 820 ILCS 115/14(a) provides that an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

137.    Plaintiff and the Rule 23 Illinois Class did not receive accurate wage statements that detailed each hour worked and their rate of pay because Defendant failed to include the compensable time discussed herein in the paystubs provided to Plaintiff and the Rule 23 Illinois Class.

138.    As discussed herein, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Illinois Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiff and the Rule 23 Illinois Class members performed on Defendant's behalf.

139.    Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession.  Additionally, Defendant made verbal offers for payment at a specified rate, which Plaintiff accepted and performed, including the unpaid pre- and post-shift work activities described herein, but Defendant failed to perform by paying Plaintiff and the Rule 23 Illinois Class the promised wages for all work.

140.    Plaintiff and every other Rule 23 Illinois Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

141.    Defendant breached its contractual promises by failing to pay Plaintiff and the Rule 23 Illinois Class for all wages (regular and overtime) owed.

142.    Defendant violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Illinois Class for the time spent on the work activities

described in this Complaint.

143.    Defendant failed to pay wages for all hours worked in a workweek, violating the IMWL and the IWPCA.

144.    As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.

145.    Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL and IWPCA at an amount to be proven at trial.

**COUNT III**
**BREACH OF CONTRACT**
**(On Behalf of the Rule 23 Nationwide Class)**

146.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

147.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Defendant's behalf.

148.    Defendant's contractual promises to pay Plaintiff and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each earnings statement issued to Plaintiff and the Rule 23 Nationwide Class members.

149.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift, including the unpaid off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with the donning and walking activities described herein.

150.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the

agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each Rule 23 Nationwide Class member.

151.    Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

152.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members have been damaged in an amount to be determined at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of the Rule 23 Nationwide Class)**

153.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

154.    This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

155.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

156.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

157.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

158.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work

tasks at the request of, without objection by, and for the benefit of, Defendant, and conferred a benefit on Defendant by doing so.

159.    Defendant appreciated, was aware of, received, and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom, including increased profits, without having paid for the same.

160.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

161.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having paid Plaintiff and the Rule 23 Nationwide Class for the same.

162.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to pay them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

163.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the putative FLSA Collective and Rule 23 Classes, requests judgment as follows:

a.      Certifying this case as a collective action under 29 U.S.C. § 216(b) with respect to Plaintiff's FLSA claim (Count I);

b.      Certifying this action as a class action (for the Rule 23 Illinois Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's Illinois state law claims (Count

II);

c.      Certifying this action as a class action (for the Rule 23 Nationwide Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d.      Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addresses, phone numbers and dates and location of employment of all FLSA Collective members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, apprising the FLSA Collective members of their rights by law to join and participate in this lawsuit;

e.      Designating Plaintiff as the representative of the FLSA Collective and the Rule 23 Classes, and undersigned counsel as Class counsel for the same;

f.      Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.      Declaring Defendant's violations of the FLSA were willful;

h.      Declaring Defendant violated Illinois wage-and-hour law;

i.      Declaring Defendant's violations of the Illinois wage-and-hour law were willful;

j.      Declaring Defendant breached its contracts with Plaintiff and the Rule 23 Nationwide Class members (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) hourly rate;

k.      Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective and the Rule 23 Classes the full amount of damages and liquidated damages available by law;

l.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

m.     Awarding pre- and post-judgment interest to Plaintiff on these damages; and

n.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury under Fed. R. Civ. P. 38.

Dated: February 27, 2025                    Respectfully Submitted,


                                            */s/ Kevin J. Stoops*
                                            Kevin J. Stoops (P64371)
                                            Sommers Schwartz, P.C.
                                            One Towne Square
                                            17th Floor
                                            Southfield, Michigan 48076
                                            (248) 355-0300
                                            kstoops@sommerspc.com

                                            *Attorneys for Plaintiff and the Putative*
                                            *Collective/Class Members*